[No. 1785.   Decided June 3, 1895.]

Herbert Bradley et al., *Appellants*, v. G. Gotzian & Co. et al., *Respondents*, G. K. Porter & Co. et al., *Appellants*.

FRAUDULENT CONVEYANCES — CHATTEL MORTGAGE — CONSIDERATION — APPLICATION OF PROCEEDS OF ATTACHMENT LEVIES.

The fact that a *bona fide* creditor who has a mortgage upon the homestead of his debtor, which, under the law, is exempt from execution, releases such mortgage and takes a chattel mortgage upon the debtor's stock of merchandise, will not render the transaction a fraudulent one, although its effect is to prevent other creditors from realizing on their claims.

The proceeds of goods directed to be sold under attachment levies should be applied on the claims of attaching creditors in the order of their levy, and not *pro rata*.

*Appeal from Superior Court, Clarke County.*

*Cake & Cake, E. Coovert, N. H. Bloomfield, E. M. Green, C. D. Bowles,* and *Miller & Stapleton,* for appellants.

*Dell Stuart,* for respondents.

The opinion of the court was delivered by

Scott, J.—The defendants, M. A. Eaton and E. A. Eaton, were husband and wife and engaged in mercantile business at Vancouver in this state; and, being

indebted to Gotzian & Co., in the sum of $2,000 for goods purchased, executed to said company a mortgage on their homestead there situated. Some two years thereafter the Eatons gave a chattel mortgage upon their stock of goods to Gotzian & Co., to secure this same indebtedness, under and· by virtue of an agreement whereby Gotzian & Co. released the mortgage aforesaid upon their homestead. The other parties to this action are attaching creditors, who caused attachments to be levied upon the merchandise after the chattel mortgage thereon was executed to Gotzian & Co., as aforesaid. · Judgment was rendered in favor of Gotzian and Co., adjudging their chattel mortgage to be a first lien upon the goods, and the attaching creditors have appealed therefrom.

It is contended that the arrangement entered into between the Eatons and Gotzian & Co., was a fraud upon the other creditors; that Gotzian & Co., having originally taken a mortgage upon the homestead to secure the indebtedness to them, could not enter into the agreement aforesaid and transfer their security to the stock of merchandise, as the Eatons were at that time indebted beyond their ability to pay. It is also contended that the acceptance of this real estate mortgage was in effect an agreement upon the part of Gotzian & Co., to look to the real estate for their pay, and that the inducement to the other creditors to extend credit to the Eatons was the unincumbered stock of merchandise, and that, having obtained credit from the other parties by virtue of having this unincumbered stock, it would be a fraud on such creditors to permit the indebtedness of Gotzian & Co., to be made from said goods and the real estate exempted.

But we are unable to see where there is any foundation for this. It is not claimed that there were any

false representations made to these other creditors in any way, and, in fact, it appears that the mortgage aforesaid to Gotzian & Co. was a matter of record. There was no presumption that the Eatons would permit the homestead to be sold to pay the indebtedness to Gotzian & Co., if they could avoid it. If anything was to be presumed it was that they would pay it from the proceeds of their business, if possible. It is the settled law of this state that a debtor may prefer one *bona fide* creditor to another, although such debtor be in failing circumstances. There was nothing to have prevented these parties from selling their entire stock for money and applying the money in discharge of the mortgage upon the homestead. There could be no fraud in so doing. It is the policy of the law to favor homestead exemptions. The only foundation for appellants' contentions in this action is the fact that this real estate was exempt as a homestead. Otherwise, it is too plain for argument that they could not complain because Gotzian & Co. took other security, or even if they had abandoned their security and made their debt out of other property, so that the mortgaged property would have been left for appellants. Now, can the fact that it was exempt as a homestead render the transaction a fraudulent one? It seems to us clearly not in reason and under the authorities. *Randall v. Buffington*, 10 Cal. 491; *Palmer v. Hawes*, 80 Wis. 474 (50 N. W. 341).

A further contention is made that the judgment should be reversed or modified because the court, after directing the payment of the amount due Gotzian & Co., ordered that the balance of the proceeds of the goods, if any, should be applied on the claims of the attaching creditors *pro rata*, when it should have been paid to them in the order of their levy or according

to priority. This seems to have attracted no attention in the lower court, and from the proofs it is quite evident that there will be little or nothing left after paying Gotzian & Co. It was probably an inadvertence upon the part of the court in directing the surplus to be paid as aforesaid, and it does not appear that the court was asked to correct it. Appellants may, upon application to the lower court, have the judgment modified in this particular, but as to Gotzian & Co. it will be affirmed with costs.

ANDERS and GORDON, JJ., concur.

HOYT, C. J. and DUNBAR, J., dissent.